578 S.E.2d 30

**Henry K. PURDY, III, Appellant,**

v.

**Catherine A. PURDY, Respondent.**

No. 3605.

Court of Appeals of South Carolina.

Submitted Jan. 13, 2003.

Decided March 3, 2003.

H. Fred Kuhn, of Beaufort, for Appellant.

Edwin W. Rowland, of Hilton Head Island, for Respondent.

HUFF, J.:

Henry K. Purdy, III (the father) appeals from an order of the family court refusing to terminate his child support obligation to Catherine A. Purdy (the mother) before the parties' child reached the age of majority. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

The parties were formerly married. Their youngest child, Ryan, who was born March 15, 1984, is the subject of this action. The mother and father were divorced by order of the family court dated October 30, 1995. Pursuant to the order, the parties were awarded joint custody of Ryan, with the mother designated the primary custodial parent. The family court set the father's monthly child support at $1,500 for Ryan and her older sister. At the time of the instant action, the father's child support obligation was $750 per month, inasmuch as Ryan's sister had already reached majority.

The father instituted this action against the mother on February 28, 2001 seeking an order declaring Ryan emancipated and terminating his child support obligation. The mother answered, denying that Ryan was emancipated.

The family court held the final hearing on the matter on May 14, 2001, at which time Ryan was still a minor. Ryan testified she quit school in late 2000 when she was in the eleventh grade. Shortly thereafter, on February 28, 2001, she moved out of the mother's home. At the time of trial, Ryan was living with her boyfriend and a roommate, and was pregnant with her boyfriend's child. Both she and her boyfriend were employed. Ryan had been employed for approximately two months by a hotel-resort baby-sitting service on a part-time basis, working three or four days per week. Ryan testified she and her boyfriend paid their own rent, food and utility expenses without assistance from the mother, and she intended to remain with her boyfriend after the birth of their child.

The mother testified she wanted what was best for her daughter. While agreeing her daughter was "out on her own" at that time, she noted Ryan's future was uncertain inasmuch

as she was still a minor and unmarried. She noted she was concerned the boyfriend could leave her daughter and she would then be responsible for both her daughter and her grandchild. She stated she did not want the child support money for herself, and would turn any further child support payments over to Ryan.

By order dated May 25, 2001, the family court declined to declare Ryan emancipated and ordered the father to continue paying child support until Ryan became emancipated by reaching the age of eighteen or getting married.[1] In reaching this determination, the trial court reasoned that there was no credible evidence establishing Ryan was able to sustain herself.

## STANDARD OF REVIEW

On appeal from the family court, this court has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). We are not, however, required to disregard the findings of the trial judge, who saw and heard the witnesses and was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Haselden v. Haselden,* 347 S.C. 48, 58, 552 S.E.2d 329, 334 (Ct.App.2001); *Wilson v. Walker,* 340 S.C. 531, 537, 532 S.E.2d 19, 22 (Ct.App.2000).

## LAW/ANALYSIS

Generally, under South Carolina law, a parent's obligation to pay child support extends until the child reaches majority, becomes self-supporting, or marries, then ends by operation of law. *See* S.C.Code Ann. § 20–7–420(17) (Supp. 2002) (granting family court jurisdiction "[t]o make all orders for support run until further order of the court, except that orders for child support run until the child is eighteen years of age or until the child is married or becomes self-supporting, as determined by the court, whichever occurs first...."). "Emancipation of a minor child is effected primarily by agree-

---

1. The court further ordered that the support "shall be paid to the mother who in turn will write a check to the child, Ryan Purdy."

ment of the parent, although acts of the child are to be considered." *Timmerman v. Brown,* 268 S.C. 303, 305, 233 S.E.2d 106, 107 (1977). "Whether a child has been emancipated depends on the facts and circumstances of each case." *Id.*

■ At first glance, the acts of Ryan strongly suggest emancipation, but when considered in light of other facts and circumstances, we agree with the findings of the trial judge and defer to his wisdom and judgment as to the lack of evidence establishing Ryan's full emancipation at the time this action was commenced. Although Ryan had moved out of the mother's home and was residing with her boyfriend, it is clear from the record that the mother, who is the primary custodial parent, objected to the move and clearly did not agree that her daughter should be emancipated. The mother testified the father gave Ryan "money behind [the mother's] back" in order to allow Ryan to move out of her home. The father himself testified he gave Ryan $700 for the "down payment" on her apartment, and took Ryan and her boyfriend to a store, spending over $500 for them to "get whatever they needed for their apartment." [2] Further, Ryan and her boyfriend were not married and, therefore, the boyfriend was not legally obligated to contribute to Ryan's support. While Ryan was employed on a part-time basis, there was no evidence that she could have supported herself in the event her relationship with her boyfriend deteriorated. Additionally, the mother testified she had continued to financially support her daughter, giving her cash, taking her out for meals, paying for repairs to Ryan's car, and paying $100 toward Ryan's medical bill until she could obtain reimbursement for the bill from Ryan's father. Thus, it appears Ryan, even with the help of her boyfriend, was not truly self-supporting.

---

2. It should be noted the father filed this action on the same day the daughter moved out of the mother's home. It appears the father is, in effect, attempting to eliminate his monthly support obligation by financially enabling his daughter to move out of the home of her mother against the mother's wishes. While we agree with the father's assertion that the provision of money to the child under these circumstances tends to reward the minor for "quitting school, moving in with her boyfriend, [and] getting pregnant," the father is, in part, the author of this problem.

## CONCLUSION

Under the particular facts and circumstances of this case, especially the fact that the primary custodial parent did not acquiesce in the minor's move from the home but the supporting parent both consented and encouraged the move with financial aide, we discern no error in the family court's ruling.

For the foregoing reasons, the decision of the family court is **AFFIRMED.**

GOOLSBY and SHULER, JJ., concur.